**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| YELIANET HERNANDEZ SANTOS, SUBMITTED BY DAELYS HERNANDEZ SANTOS, AS NEXT FRIEND; *Petitioner* | § § § § § § | Case No. SA-25-CA-01765-XR |
| v. | § § § | |
| GARLAND MERRICK, UNITED STATES ATTORNEY GENERAL; FIELD OFFICE DIRECTOR, SAN ANTONIO ICE FIELD OFFICE; CORECIVIC, WARDEN, KARNES COUNTY RESIDENTIAL CENTER; UNITED STATES DEPARTMENT OF HOMELAND SECURITY (DHS), UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE), PAM BONDI, *Respondents* | § § § § § § § § § § § | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

On this date, the Court considered Yelianet Hernandez Santos's *pro se* Petition for a Writ of Habeas Corpus (ECF No. 1), filed by her sister, Daelys Hernandez Santos ("Next Friend"); the testimony and arguments at the hearing held on January 29, 2026; and the Federal Respondents' Response (ECF No. 9). After careful consideration, the petition is **GRANTED**. It is **ORDERED** that:

1.    Respondents are **DIRECTED** to **RELEASE** Petitioner Yelianet Hernandez Santos (A 220 749 646) from custody, under conditions no more restrictive than those in place before the detention at issue in this case, to a public place by **February 2, 2026.**

1

2.       Respondents must **NOTIFY** the Next Friend[1] of the exact location and time of Petitioner's release as soon as practicable and **at least two hours before release;**

3.       If Petitioner is re-detained pursuant to 8 U.S.C. § 1226, all applicable procedures must be followed, including that Petitioner be afforded a bond hearing; and

4.       Respondents shall **FILE** a status report on **February 3, 2026**, confirming that Petitioner has been released under conditions of release no more restrictive than those in place prior to the detention at issue in this case.

## FACTUAL BACKGROUND

Petitioner is a native and citizen of Cuba who last entered the United States without inspection on or about March 5, 2022. ECF No. 1 at 11. She was apprehended after her entry, placed in full removal proceedings under 8 U.S.C. Section 1229a, and released on her own recognizance pursuant to 8 U.S.C. Section 1226. *Id.* at 11, 14.

On September 9, 2025, Petitioner reported to an immigration check-in, and Immigration and Customs Enforcement ("ICE") detained her.  ECF No. 9-2.  She remains detained at the Karnes County Immigration Processing Center ("KCIPC"), in Karnes City, Texas.  ECF No. 1.

## PROCEDURAL HISTORY

Petitioner filed a habeas petition asserting that her detention violates the Immigration and Nationality Act ("INA") and her due process rights. *See* ECF No. 1.

Respondents detained Petitioner without a bond hearing, based on a novel reading of 8 U.S.C. § 1225(b) adopted by the Board of Immigration Appeals ("BIA")—described more fully herein—that has been rejected by this Court. *See, e.g.*, *Granados v. Noem*, No. SA-25-CA-1464-XR, 2025 WL 3296314 (W.D. Tex. Nov. 26, 2025); *Pineda v. Noem*, No. SA-25-CA-1518-XR,

---

[1] Daelys Hernandez Santos, Daelys102@gmail.com, 713-875-1749

2

2025 WL 3471418 (W.D. Tex. Dec. 2, 2025). The Court directed Respondents to consider its orders in those cases and note any material differences in this one. *See* ECF No. 4.

Respondents filed a response in which they did not identify any material difference between this case and *Granados* or *Pineda.* ECF No. 9. Further, at the hearing Respondents represented that this case presents no material factual or legal differences.

**LEGAL STANDARD**

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at \*4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); also citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

**DISCUSSION**

**I.      Next-Friend Standing**

"'[N]ext friend' standing . . . has long been an accepted basis for jurisdiction in certain circumstances." *Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990). The burden is on the "next friend" clearly to establish his or her status by satisfying two conditions. *Id*. at 164.

"First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." *Id.* at 163. "[T]hat explanation must be supported by relevant proof." *Soto v. Sowell*, No. CV H-25-1362, 2025 WL 2822000, at \*3 (S.D. Tex. Oct. 3, 2025).

3

"Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Whitmore*, 495 U.S. at 162. In other words, the "next friend" must show "some significant relationship with the real party in interest." *Id*. at 164. "The burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Id.*

For the reasons stated in open court, the Court finds, that the conditions at the KCIPC—and, in particular, detainees' virtually non-existent access to free legal resources in any language other than English and other materials required to prepare *pro se* filings—render this Court inaccessible to the Petitioner.[2]

The Court further finds based on the testimony at the hearing and representations in the Petition that the Next Friend has a "significant relationship" with the Petitioner (as her sister), *Whitmore*, 495 U.S. at 164, and is "truly dedicated to the best interests of" the Petitioner, *id.* at 162. There is no reason to believe that the petition in this matter was filed by an "intruder or uninvited meddler" seeking to "circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" *Id.* at 164.

In short, the Court concludes that the Next Friend has properly asserted standing to seek habeas relief on the Petitioner's behalf.

## II.     Legal Framework for Immigration-Related Detention

Relevant here, the INA prescribes two forms of detention for noncitizens in removal proceedings—mandatory detention under 8 U.S.C. § 1225(b) and discretionary detention under 8

---

[2] While many detainees at the Karnes facilities have counsel in their removal proceedings, it does not follow that the scope of that representation *includes* challenges to detention. *Cf. Granados*, 2025 WL 3296314, at *1–4 (recognizing distinction between challenges to removal and challenges to detention).

U.S.C. § 1226(a). Noncitizens subject to discretionary detention under Section 1226(a) are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Respondents contend that Petitioner's detention is governed by 8 U.S.C. § 1225(b), which provides for *mandatory* detention of (i) certain noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and (ii) other recent arrivals "seeking admission" under 8 U.S.C. § 1225(b)(2). As the Supreme Court has explained, Section 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Noncitizens detained under this provision may be released only through the Department of Homeland Security's exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A). *Id.* at 300.

Section 1226, on the other hand, has historically been understood to "appl[y] to aliens already present in the United States." *Jennings*, 583 U.S. at 303. Indeed, for nearly three decades, Respondents consistently considered noncitizens present in the United States without having been admitted or paroled as being detained under 8 U.S.C. § 1226(a) and thus entitled to bond hearings.[3]

In 2025, Respondents adopted a novel theory that noncitizens who are present in the United States without admission or parole are ineligible for bond hearings.[4] Ultimately, the BIA adopted this position in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025), holding that all noncitizens who entered the country without inspection are subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2). Courts across the country, including this one, have

---

[3] *See, e.g.*, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

[4] In July 2025, Todd Lyons, Acting Director of ICE, issued an internal memorandum explaining that the agency had "revisited its legal position" and "determined that [Section 1225] of the [INA], rather than [Section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 217–18 (D. Mass. 2025).

rejected Respondents' broad interpretation of Section 1225(b),[5] relying on several rationales, from statutory language and context to legislative history and longstanding agency practice.[6]

### III.    This Court's Previous Rulings

#### A.    Subject Matter Jurisdiction

In previous cases, Respondents have argued that several provisions of the INA divest the Court of jurisdiction to consider habeas petitions challenging this novel theory of detention. *See, e.g.*, *Granados*, 2025 WL 3296314, at *1–4. But the Court found each of the jurisdiction-stripping provisions cited by the government to be inapposite. For example, 8 U.S.C. §§ 1252(g) and (b)(9) deprive the Court of jurisdiction to consider challenges to *removal proceedings*, not challenges to *detention*. *See id.* at *1–3. Similarly, 8 U.S.C. § 1225(b)(4), which addresses challenges by immigration office*r*s to *favorable* admissions decisions, has nothing to do with detention. *See id.* at *3. Finally, 8 U.S.C. § 1226(e) bars judicial review of *discretionary* detention decisions, not mandatory detention under Section 1225(b). *See id.* at *3–4.

#### B.    Merits

Turning to the merits, the Court has previously held that noncitizens who entered the United States without inspection and are in "full" removal proceedings for their mere "unlawful presence" in the country are not subject to mandatory detention under either Section 1225(b)(1) or

---

[5] *See, e.g.*, *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same); *Acea-Martinez v. Noem*, No. 5:25-cv-1390-XR, ECF No. 9.

[6] *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases); *see, e.g.*, *Cardona-Lozano v. Noem*, No. 1:25-CV-1784-RP, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) (noting that the BIA's interpretation in *Matter of Hurtado* was not entitled to any deference under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and was unpersuasive given its "inconsistency with prior pronouncements"); *see also id.* at * 5 (noting that Respondents' interpretation would render a recent amendment to the INA, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), "effectively meaningless").

(b)(2), as a textual matter. *Granados*, 2025 WL 3296314, at *6; *Pineda*, 2025 WL 3471418, at *5.[7]

### 1.    Section 1225(b)(1)

To begin, Section 1225(b)(1) does *not* authorize the detention of noncitizens charged with removability for mere unlawful presence in the United States under 8 U.S.C. § 1182(a)(6)(A)(i). *Pineda*, 2025 WL 3471418, at *6. Indeed, Section 1225(b)(1) applies only to noncitizens found subject to expedited removal for either (i) seeking admission by fraud or willful misrepresentation, 8 U.S.C. § 1182(a)(6)(C), or (ii) lacking proper entry documentation, § 1182(a)(7). *See* 8 U.S.C. § 1225(b)(1)(A)(i). To be detained under Section 1225(b)(1), an alien must be found inadmissible under one of those two provisions when "arriving" at a port of entry or apprehended within two years of their entry into the United States. *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II); Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139-40 (Jan. 24, 2025).

### 2.    Section 1225(b)(2)

Second, noncitizens who entered the United States without inspection cannot be later be detained under Section 1225(b)(2) because, by definition, they are not "seeking admission" within the meaning of the INA at the time of their detention. *Granados*, 2025 WL 3296314, at *6; *Pineda*, 2025 WL 3471418, at *5. As the Supreme Court has explained, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)." *Jennings*, 583 U.S. at 289 (emphasis added). "The terms 'admission' and 'admitted' mean, with respect to an alien, the *lawful entry* of the alien into the United States *after inspection and authorization by an immigration officer*." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). A noncitizen who enters without inspection "[is] not seeking entry, much less 'lawful entry . . . after

---

[7] The Court did not reach the petitioners' constitutional claims in either case.

inspection and authorization." *Granados*, 2025 WL 3296314, at \*6 (citing *Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008), *as amended* (June 5, 2008) ("Under th[e] statutory definition, 'admission' is the lawful *entry* of an alien after inspection, something quite different, obviously, from post-entry adjustment of status.")).

## IV.    Analysis

Given the absence of any material differences between this case and *Granados* or *Pineda*, Petitioner cannot be detained under Section 1225(b)(1) or (b)(2).[8] Because Respondents do not claim that Petitioner is being detained under Section 1226, "the Court sees no reason to consider" Section 1226 as a basis for Petitioner's current detention. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025). Thus, Petitioner's detention is unlawful, and habeas relief is proper. Petitioner must be released from detention.

## CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**, and Respondents are **DIRECTED** to release Petitioner in accordance with the parameters set forth on the first and second pages of this order. Petitioner's motions for expedited review (ECF Nos. 2, 11) are **DENIED AS MOOT**.

The Clerk is **DIRECTED** to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 30th day of January, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[8] Respondents' legal arguments in those cases are incorporated herein and preserved for the purposes of any future appeal.